Filed 3/14/25  P. v. Amos CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>FRED LYNN AMOS,<br><br>　　　Defendant and Appellant. | A169358<br><br>(Contra Costa County<br>Super. Ct. No. 05-910595-8) |

In 1992, a jury convicted Fred Amos and his codefendant, Donald Boston, of multiple offenses, including three special circumstance murders. The judgment was affirmed by a different panel of this court. (*People v. Amos et al.* (July 22, 1994, A058843) [nonpub. opn.] (*Amos I*).)  In 2022, Amos filed a petition to vacate his murder convictions and resentence him for his other offenses, which the trial court summarily denied. (Pen. Code, § 1172.6; statutory references are to the Penal Code, unless otherwise indicated.) Amos contends the court erred in concluding that he is ineligible for resentencing as a matter of law.  We affirm.

## BACKGROUND

The parties do not discuss the facts that led to the charges against Amos and Boston.  Moreover, we do not rely on the factual summary in *Amos I* when assessing whether Amos has made a prima facie case for resentencing relief.  (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227,

1

1238.)  However, we utilize *Amos I* to flesh out the procedural history of this case and to provide some basic context.

In December 1989, several individuals gathered at a minimart in Vallejo, ostensibly to conduct a drug deal.  (*Amos I, supra*, A058843 at pp. 5–9.)  Days later, three people with connections to the incident were found dead. (*Id*. at p. 11.)  The following month, two individuals who worked at the minimart were placed in a witness protection program.  (*Id*. at pp. 14–15.) Over a year later, Amos and Boston were charged with multiple offenses pertaining to these incidents.  (*Amos I*, at p. 21–22.)

***Criminal Charges***

In January 1992, the Contra Costa County District Attorney filed an amended information charging Amos and Boston with committing multiple offenses in December 1989, and Boston with committing additional offenses in January 1990.  For clarity, we discuss the charges as they apply to Amos.

Amos was charged with the first degree murders of three victims, Castaneda, Blackmon, and Treas.  (§ 187, counts 1–3.)  As to all three charges, the information alleged the special circumstance that Amos committed multiple murders.  (§ 190.2, subd. (a)(3).)  The information also alleged three special circumstances for committing the murders during the commission of another qualifying felony.  (§ 190.2, subd. (a)(17) [the felony-murder special circumstances].)  Specifically, the prosecution alleged that Amos and Boston were committing robbery when Castenada and Treas were murdered; they were committing burglary when Castenada and Blackmon were murdered; and they were committing kidnapping when Castenada and Treas were murdered.

In addition to the three murders, Amos was charged with the following offenses:  kidnapping for robbery (§ 209, subd. (b), counts 4–5); robbery

2

(§§ 211–212.5, subd. (a), counts 6–7); burglary (§§ 459, former 460.1, & former 460.2, counts 8–9); vehicle theft (Veh. Code, § 10851, subd. (a), count 10); conspiracy to commit robbery, burglary, and kidnapping (former § 182.1, count 11); and unlawful possession of a concealable firearm by a felon (§ former 12021, count 12).

The People alleged that Amos personally used a firearm while committing all charged offenses, except for the unlawful gun possession charge. (§ 12022.5, subd. (a).)

### *Jury Instructions Regarding Murder Charges*

At trial, the jury was instructed regarding two theories of first degree murder: deliberate, premeditated killing with malice aforethought and felony murder, with robbery and burglary designated as the predicate offenses. The jury also received instruction regarding the liability of an aider and abettor, which provided that an aider and abettor is guilty not just of the "particular crime aided and abetted" (the target offense), but is also "liable for the natural and probable consequences of the commission of such crime." This instruction made clear that a defendant could not be found guilty as an aider and abettor of any crime unless the jury was "satisfied beyond a reasonable doubt that such crime was committed . . . ."

As to the special circumstance allegations, the jury was instructed that if they found Amos guilty of first degree murder, they needed to decide whether the prosecution proved any one of the four special circumstances as to each murder victim. To assist the jury in making these determinations, the court used a modified version of CALJIC No. 8.80, which stated in part:

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

3

"If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true.

"If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer, you cannot find any special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree.

"In other words, to find any of the four alleged special circumstances to be true, you must be satisfied beyond a reasonable doubt that the defendant actually killed a human being or had the specific intent to aid and abet another in killing even though some other person actually did the killing."[1]

### *Jury Verdicts and Sentence*

The jury found Amos guilty of all charges except for one kidnapping for robbery charge, as to which he was convicted of the lesser offense of kidnapping. As to each murder conviction, the jury found that Amos used a handgun during the commission of the offense, and that all of the special circumstance allegations were true. The jury also found true all other firearm use allegations, except for one pertaining to one of the burglary convictions.

As noted, the charges and special circumstances alleged against Amos were also charged and alleged against his codefendant, Boston. The jury found that Boston was guilty of the same offenses that Amos committed, and

---

[1] The last sentence of this excerpt from the special-circumstance instruction was an addition to the standard CALJIC instruction.

made identical findings regarding the special circumstance and gun use allegations for both defendants.  (*Amos I*, *supra*, A058843 at p. 22.)  The trial court granted defendants' motion to sever the penalty phase of trial, and the jury returned verdicts of life without the possibility of parole for both Amos and Boston.  (*Ibid.*)

In August 1992, the trial court sentenced Amos to three consecutive life terms in state prison without the possibility of parole for the three murder convictions, each with consecutive four-year terms for the firearm use enhancements.  The court stayed sentences as to all other convictions pursuant to section 654.

Both defendants filed appeals, which were decided in *Amos I*.  The *Amos I* court directed the trial court to modify the firearm use enhancements relating to the murder convictions, by imposing a two-year enhancement for the murder charged in count 1 and staying enhancements for the other two murders.  (*Amos I*, *supra*, A058843 at p. 69.)  In all other respects, the judgment was affirmed.  (*Ibid.*)

**RESENTENCING PROCEEDING**

*Senate Bill 1437*

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended provisions of the Penal Code pertaining to the felony-murder rule (§ 189) and the natural and probable consequences doctrine (§ 188).  (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  Regarding the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e) (section 189(e)), which states:  "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual

5

killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." As to the natural and probable consequences doctrine, section 188, subdivision (a)(3) now provides: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Senate Bill 1437 also "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," by filing a petition for resentencing under section 1170.95, which was later renumbered as section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); see also *Lewis*, *supra*, 11 Cal.5th at p. 959.) Pursuant to section 1172.6, a person previously convicted of murder or attempted murder may file a resentencing petition "when all of the following conditions apply": (1) the charging document filed against the petitioner permitted the prosecution to proceed under a theory of felony murder, or another theory of imputed malice; (2) the petitioner was convicted of murder, attempted murder or manslaughter following a trial or plea proceeding at which the petitioner could have been convicted of murder or attempted murder; and (3) the "petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

6

**Amos's Resentencing Petition**

On June 1, 2022, Amos filed a petition for resentencing, checking boxes on the form to indicate that he satisfies the statutory conditions for resentencing. The People opposed the petition, contending that the jury's special circumstance findings establish Amos is ineligible for relief as a matter of law. After the court appointed counsel for Amos, he filed a reply brief in support of his petition. Amos argued that he made a prima facie case by alleging that the conditions for relief have been met because his record of conviction does not foreclose the possibility that the jury relied on the natural and probable consequences doctrine and/or a no longer valid felony murder theory.

On September 29, 2023, the trial court denied Amos's petition in a detailed written order. The court found that the record of conviction establishes that Amos's murder convictions are based on a still valid theory of murder liability, thus making him ineligible for resentencing as a matter of law. In reaching this conclusion, the court found that the special circumstance findings establish that the jury found Amos was either the actual killer or that he acted with the intent to kill while aiding and abetting the actual killer.

## DISCUSSION

Amos contends the trial court erred in finding that Amos failed to make a prima facie showing that he is eligible for resentencing.

The procedure for seeking resentencing relief "begins with the filing of a petition containing a declaration that all requirements for eligibility are met." (*Strong*, *supra*, 13 Cal.5th at p. 708.) Upon receipt of a facially valid petition, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Ibid*.) At that stage, the

7

"court may look at the record of conviction, which will necessarily inform its 'prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; see *Lewis*, *supra*, 11 Cal.5th at p. 971.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).) If, on the other hand, "the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, at p. 708.) Denial of a resentencing petition at the prima facie stage is reviewed de novo. (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1238; *Williams*, at p. 1251.)

The dispositive issue presented by this appeal pertains to the third condition for resentencing, whether Amos "could not presently be convicted of murder . . . because of changes to Sections 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) Amos contends that his record of conviction does not conclusively negate the possibility that the jury convicted him of the three murders by "imputing malice" pursuant to a no longer valid theory of murder liability. We disagree.

Under current law, a murder committed "in the perpetration" of a robbery or a burglary "is murder of the first degree." (§ 189, subd. (a).) Participation in the qualifying felony in which the death occurs is sufficient to justify liability for first degree murder if the defendant (1) was the actual killer, (2) was not the actual killer, but with intent to kill, aided and abetted or assisted the killer in the commission of the murder, or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189(e).) Here, the record of conviction does not conclusively

show that Amos was the actual killer, but it does establish that he had the intent to kill, and that, if he was not the actual killer, he aided and abetted the actual killer in the commission of the first degree murders of Castaneda, Blackmon and Treas.  (§ 189(e)(2).)  We reach this conclusion based primarily on our consideration of the jury instructions and findings regarding the felony-murder special circumstance allegations.

The jury was instructed that, in order to find any of the special-circumstance murder allegations true, it had to find that Amos was either the actual killer or that "with the intent to kill" he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree."  This quoted language mirrors language in section 190.2, subdivision (c) (section 190.2(c)), which currently provides:  "Every person, not the actual killer, who, with the intent to kill, aids, abets, . . . or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."

The jury found that the four special circumstances alleged against Amos were true as to each of the three murders that Amos was convicted of committing.  Thus, even if Amos was not the actual killer, the jury found that he harbored the requisite intent to kill when he aided, abetted, or assisted "in the commission of murder in the first degree."  These findings, considered together with the charges, instructions and verdicts, establish that Amos was convicted under a still valid theory of felony murder, as he was either the actual killer or, at the very least, acted with the intent to kill when he assisted in the commission of the first degree murders by aiding and abetting the robbery and burglary offenses during which the killings occurred.

9

Amos makes two substantive arguments on appeal. He argues first that his murder convictions may no longer be valid because the jury could have relied on the natural and probable consequences instruction to impute malice when they decided the murder charges. Amos acknowledges that the jury necessarily found that he intended to kill by finding all special circumstance allegations were true, but he posits that "just because the jury found intent to kill later does not necessarily mean it found the same thing earlier." This argument fails in light of *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), which holds that a finding of intent to kill made pursuant to a special-circumstance murder allegation is relevant and binding on the petitioner in a resentencing proceeding. (*Id.* at pp. 453–460 [addressing a gang-murder special circumstance].)

Amos mistakenly relies on *People v. Pacheco* (2022) 76 Cal.App.5th 118. In that case, as in *Curiel*, the jury's true finding as to a gang-murder special circumstance allegation did not necessarily preclude resentencing relief because that finding established only that the defendant had the requisite mental state. Neither gang-murder enhancement nor any other finding established that the jury necessarily found that the defendant's conduct "directly aided and abetted" the murder. (*Pacheco*, at pp. 122, 127–128; see *Curiel, supra,* 15 Cal.5th at pp. 466, 471.) In contrast to *Pacheco* and *Curiel*, this case involves felony-murder special circumstance findings. To return those true findings, the jury necessarily found that Amos not only had the requisite mental state, he either killed the victims himself or he aided, abetted or assisted in the commission of the first degree murders.

Amos's second argument is that the felony-murder special circumstance findings do not necessarily establish that his conduct would constitute murder under current law, after the enactment of section 189(e). According

to this argument, the language in section 189(e)(2) requiring that a defendant who was not the actual killer must have aided, abetted, or assisted the "actual killer in the commission of murder" changed the law of felony-murder by requiring that the defendant must have aided, abetted, or assisted the killing itself, not just the target felony during which the murder occurred. Amos contends the jury did not necessarily make that finding about him because the special-circumstance findings establish only that he assisted "any actor" in the commission of these murders.

This same argument was rejected in *People v. Lopez* (2023) 88 Cal.App.5th 566 (*Lopez*), which holds that Senate Bill 1437 did not change the actus rea requirement for convicting an aider and abettor of first degree felony murder; under the current and former law, it must be shown that the defendant aided and abetted the qualifying felony. (*Lopez*, at pp. 577–578.) As the *Lopez* court explained, Senate Bill 1437 did not eliminate or amend provisions in section 189, subdivision (a), which establish that a murder committed "in the perpetration of" a qualifying felony constitutes first degree murder. (*Lopez*, at p. 577; see *id*. at p. 581 (dis. opn. of Raphael, J.).) Instead, Senate Bill 1437 " 'narrowed the scope' " of the felony-murder rule by adding section 189(e). (*Lopez*, at p. 574.) Under the old felony murder law, before Senate Bill 1437 was enacted, "[t]he necessary mental state was simply the intent to commit a qualifying felony" as "malice was imputed to the participant based on their willingness to commit a felony our Legislature deemed ' "inherently dangerous to human life." ' " (*Lopez*, at p. 574, italics omitted.) In the *Lopez* case, the jury found that the victim was murdered while the defendant and his confederate were attempting to rob him, and that finding plus an intent to kill finding made during a later phase of the trial established that the defendant " 'aided, abetted, . . . or assisted the

actual killer in the commission of murder in the first degree' within the meaning of section 189, subdivision (e)(2)." (*Id.* at p. 577.) Similarly, in this case, the felony-murder special circumstance findings show that the jury found that Amos had the intent to kill when he and Boston were engaged in the commission of a qualifying felony during which the victims were killed.

Relying on the dissenting opinion in *Lopez*, which in turn relied on *People v. Ervin* (2021) 72 Cal.App.5th 90, Amos argues that the special circumstance felony-murder findings made by the jury in 1992 do not satisfy section 189(e)(2) which expressly requires that a defendant must have aided and abetted the "actual killer," and that this allegedly new requirement limits aider and abettor liability for felony murder to cases in which the defendant aided and abetted the homicidal act itself. We disagree, as we find the analysis of the *Lopez* majority more persuasive. (See also *People v. Morris* (2024) 100 Cal.App.5th 1016, 1026, review granted July 17, 2024, S284751 ["actus reus required for those possessing an intent to kill is simply aiding the underlying felony in which a qualifying death occurs"].)

As explained in *Lopez*, the purpose of Senate Bill 1437 "was to stop the practice of imputing malice to defendants to justify convicting them of murder. A defendant who participates in a qualifying felony while harboring express malice does not fall into the class of offenders the new law was enacted to protect. [Citation.] In other words, because express malice is an element of [section 189(e)(2)] felony-murder liability, there is no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill 1437—'aiding and abetting the underlying felony or attempted felony that results in the murder.' " (*Lopez, supra*, 88 Cal.App.5th at p. 578, italics omitted, quoting *People v. Clark* (2016) 63 Cal.4th 522, 615.) Thus, under felony-murder law,

both currently and historically, "assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez*, at p. 578.) There is no new requirement that the defendant must have also assisted in the killing act itself.

The *Lopez* majority's construction of section 189(e)(2) is consistent with and reinforced by authority construing substantially similar language in section 190.2(c), the special-circumstance murder statute addressing aiders and abettors. As noted, section 190.2(c) provides for enhanced penalties when a special circumstance has been found true as to a defendant convicted of first degree murder who, though not the actual killer, "with the intent to kill, aids, abets, . . . or assists any actor in the commission of murder." Our Supreme Court has construed this language to mean that the defendant must have aided or abetted the predicate felony but need not have assisted in the killing itself. (*People v. Dickey* (2005) 35 Cal.4th 884, 900 [construing section 190.2, former subd. (b), now subd. (c)].) The fact that the Legislature elected to use language that is substantively similar to section 190.2(c) when it enacted section 189(e)(2) reinforces that the Legislature intended both provisions to have the same meaning, i.e., that a defendant who aids, abets, or assists in the commission of the predicate felony thereby also aids, abets, or assists in " 'the commission of murder.' " (*Lopez*, *supra*, 88 Cal.App.5th at pp. 577–578, italics omitted.)

Moreover, construing section 189(e)(2) as changing the actus reus for felony murder would defy common sense because it would make it "easier for the prosecution to obtain a conviction for defendants who harbored the less culpable mindset of reckless indifference to human life than for those who acted with express malice." (*Lopez*, *supra*, 88 Cal.App.5th at p. 579, italics

13

omitted.) Under the reckless disregard to human life provision of section 189(e), the defendant need only have been a major participant in the felony to be guilty of murder, and yet under Amos's reading of the statute, a defendant who acts with actual malice would not be guilty of murder unless the prosecution proved that the defendant not only aided and abetted the qualifying felony but also aided the "murderous act as well." (*Lopez*, at p. 579, italics omitted.) Such a construction is inconsistent with the legislative purpose underlying Senate Bill 1437, which was to "stop the practice of imputing malice," not to "make felony-murder liability more difficult to prove than direct aiding and abetting in cases where the defendant acted with express malice." (*Lopez*, at p. 579, italics omitted.)[2]

Amos makes two additional arguments, ostensibly to show that while a felony-murder special circumstance finding may be dispositive in some cases, it does not render him ineligible for resentencing. First, Amos concedes that the distinction between "any actor" and "actual killer" may be immaterial when the evidence shows that only two people perpetrated the felonies, in which case it can be assumed that the defendant who aided the commission of the felony thereby assisted the actual killer. Here, however, the conspiracy charges alleged against Amos and Boston included allegations of acts

---

[2] We note that Amos contends repeatedly that *Strong*, *supra*, 13 Cal.5th 698, supports his argument that special circumstance murder findings do not necessarily make him ineligible for resentencing. Under *Strong*, a felony-murder special circumstance enhancement that was based on findings the defendant (1) was a major participant in the underlying felony who (2) acted with reckless indifference to human life, does not necessarily establish that defendant is ineligible for resentencing under section 189(e)(3), if the findings were made before these requirements were elucidated by the California Supreme Court. (*Strong*, at pp. 710–711, see pp. 717–718, 719–720.) *Strong* does not assist Amos, who contends erroneously that he may be eligible for resentencing under section 189(e)(2).

committed by a third cohort, Jackson. Amos argues that these allegations open the possibility that he was found to have aided and abetted somebody who was not the actual killer, i.e., " 'a nonkilling accomplice or coconspirator.' " (Quoting *People v. Singer* (1990) 226 Cal.App.3d 23, 44.) We reject Amos's contention that this factual wrinkle alters the analysis in his favor, as it rests on the same premise that section 189(e)(2) changed the law to require the defendant to have aided in the act of killing itself.

As explained above, "assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez, supra*, 88 Cal.App.5th at p. 578.) This principle does not depend on the number of people who commit the qualifying felony, as all participants in the crime necessarily aid the others, the actual killer included. Thus, if the defendant's conduct constitutes aiding and abetting a target felony, and a death occurs during commission of the felony, that defendant has necessarily assisted the actual killer in committing first degree murder, whether or not the defendant assisted in the specific act of killing itself.

Amos's other factual theory pertains to the trial court's modification of CALJIC No. 8.80, which was used to instruct the jury regarding the special circumstance murder allegations. As previously noted, the court added a sentence to the instruction that stated: "In other words, to find any of the four alleged special circumstances to be true, you must be satisfied beyond a reasonable doubt that the defendant actually killed a human being or had the specific intent to aid and abet another in killing even though some other person actually did the killing." Reading the sentence in isolation, Amos posits that it does not bar resentencing, because it shows only that the jury found he harbored an intent to kill, which does not " 'itself conclusively

15

establish that a petitioner is ineligible for relief.' " (Quoting *Curiel, supra*, 15 Cal.5th at p. 461.) However, a jury instruction " 'cannot be judged on the basis of one or two phrases plucked out of context.' " (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 465.) Viewed as a whole, the CALJIC instruction conveyed to the jury that a true finding as to any one of the felony-murder special circumstance allegations required the jury to find both that Amos had the intent to kill and that he was a direct aider and abettor.

Section 189(e)(2) changed the law of felony murder but continues to impose liability on a defendant who is not the actual killer but who, with intent to kill, aids, abets, or assists in the commission of a predicate felony during which a death occurs. Such conduct necessarily aids all of the principals, including the actual killer, in commission of the murder. Because Amos's record of conviction shows that the jury made findings sufficient to convict him of first degree felony murder under this law, we reject his contention that the trial court erred by denying his petition.

## DISPOSITION

The order denying Amos's petition for resentencing is affirmed.


TUCHER, P.J.


WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.


*People v. Amos* (A169358)